At the core of this appeal is an effort by the defense to ensure that the jury in Mr. York's trial is charged with an instruction that enables them to differentiate between a prank call and an actual attempt to impersonate a federal employee, in this case, because the trial judge did not instruct as to the mens rea required to violate section 912. Mr. York is denied his due process. Let me start by saying that the case law here is a mess. I'm talking about the background case law. But my understanding of it is that intent to defraud, as such, is not an element, at least. So that seems like a tough argument. You're also arguing for a materiality instruction, which might serve some of your purposes. Well, Your Honor, I'm in agreement with the court that, other than the fact that the intent to defraud is certainly not an element. Mr. York's argument here is that the intent to deceive is, in fact, an element. And that is the holding of Thompson-McGill. And that it restricts the conduct that can be punished under this statute to, quote, a narrow range of conducts limited to intentionally deceptive acts. And so I'm in complete agreement. Objectively intentional or, I'm thinking of the truth, right? Because there's a first amendment background here that needs to be taken into account. So does intent mean what it usually means, i.e., subjectively? Or does it mean an act that would tend to make somebody do something? So it's, I think that the Alanis case, as to the subjective intent for threats, is instructive here. Because what we're dealing with is a statute which is interestingly drafted. It does not include, it doesn't include a specific description of what the mens rea would be. But as Alanis holds, especially in cases that are dealing with speech and Alanis, the threat statute did not have any specific description of the required mens rea. And the Supreme Court held that it was, in fact, necessary. And I think that that is exactly the situation that we're in now. I think it is a requirement that there be a subjective intent to deceive. And I think that's completely consistent with the Thompson-McGill matter, which was decided in 2014. Let's assume there's problems with the instruction. Why is it prejudicial? Why is it harmless? It's not harmless, Your Honor. The defense certainly disagrees with the government's suggestion that the evidence in this case was uncontroverted. In fact, it was hotly contested at trial. The evidence in this case is, well, first, the standard is extraordinarily high for the government to reach. I mean, it's their burden to show that this was harmless beyond a reasonable doubt. And in this case, we have a set of facts that could certainly be considered just for the purpose of annoying the victim in this case, as opposed to try to deceive him into taking some other fortune of action. And so I think it's a. It seems like the evidence made it pretty clear that Mr. York wanted to make the IRS phone call appear authentic. Why else would he have gotten the spoofing sort of technology to do that? And it seems like he wanted to cause Mr. Hessenfloh to act in the way, you know, that you would think somebody would act if you didn't know it was a deceptive phone call by trying to get him to get the past tax returns together. It seems like he put a fake number. I mean, he did a lot of things here. He wasn't just calling the, you know, local grocery store and saying, hey, do you have, is your refrigerator running? I mean, there's a lot more to this. There's no question that it was in bad taste. There's no question that he did take some pains to perhaps make it particularly annoying. The call itself, a very short voicemail with a heavily altered voice and a fake callback number. I mean, I don't disagree with the court that there's a perspective that it could be done for that purpose. But there's also certainly the perspective that it could be done just to annoy. For instance, it was sandwiched between, I believe, eight phone calls and voicemails that day and Friday. Well, there are some. I mean, he was just trying to accomplish what he had been accomplishing. He just would have done more of the same thing. He obviously had something else in mind, which was something other than simply aggravating this guy. Aggravating him in a different way, which was making him at least momentarily think that the IRS was coming after him. But I don't think that that's our purview here. I think that that is for the consideration of the jury. And I certainly don't think that the government has proven beyond a reasonable doubt that no juror could, with the knowledge that it required an intent to deceive, view a different purpose. And understanding that there may be different interpretations of this, but there is certainly an interpretation from the defense's perspective that it was not done to actually deceive Mr. Hesinfloh into a course of conduct. Well, the question is, maybe not deceive him in the long run, but at least deceive him in the short run, which is essentially what happened. I mean, he at least was concerned enough about it to Google the phone call and Google the phone number to find out whether it was authentic. And you would say, well, if he actually called the phone number, he would have found out it wasn't authentic. But in either case, he was doing something in response to this call that he wouldn't have done. He wasn't impersonating an IRS agent. I think all those actions, though, can be characterized as him putting together his evidence to get Mr. York in trouble for just this. And I think that simply getting a rise out of Mr. Hesinfloh, the recipient of the phone call, is not sufficient to support a conviction under 912. And I think that it's not harmless because a jury, in the context of the facts of their prior communications and subsequent communications, could interpret Mr. York's actions only to get a rise out of him. He thought that there was no intent requirement, but there was a materiality requirement, i.e., and that it should have been told to the jury something, essentially the same thing, but on an objective rather than a subjective basis, i.e., something that would have made a reasonable person react. Would you have to say it harms his argument, then? Yes, Your Honor, and I think it's because it's not simply that they react in any way. It's that they react towards some course of conduct. And I think that it's certainly, from the jury's perspective, could be seen as Mr. Hesinfloh being upset by receiving the phone call but immediately suspecting Mr. York because of all the rest of the context, and then engaging in his further investigation to put together the e-mail that he sent the next day to the TICTA agent to say, as he did, I believe this to be Mr. York's actions because of his consistent conduct. I'm out of time. Thank you. Okay. Well, thank you for the two minutes, Your Honor. Thank you. Good morning, Your Honors. Jonas Lerman for the United States. This Court should affirm Mr. York's conviction. The evidence viewed in the light most favorable to the government was more than sufficient to support the jury's guilty verdict, and the jury was correctly instructed on the two elements of Section 912 in accordance, not just with this Court's model. What does that just mean? It means, as this Court said in Thomson-McGill, it means it requires only that the government show any overt act consistent with the assumed character. Those were the words of Thomson-McGill. But Thomson-McGill also said that to respond to the First Amendment problem, which seems serious, that the statutory elements incorporate an intent to deceive. Right. Right. So our view is that the two elements identified in Thomson-McGill, falsely pretending to be an officer or employee, acting with the authority of the United States government, and two, acting as such, each of those elements incorporates that intent requirement that was identified in the overbreadth analysis. So on the first element, falsely pretending. But why would you tell the jury that? I mean, it's certainly not self-evident at all that acting as an IRS agent incorporates an intent to deceive. Well, I think the jury is told that in this Court's model and structure. If they act as, that's it. Well, may I start with the first element, falsely pretend? Because I think that's, Thomson-McGill said both elements incorporate this intent to defraud or intent to deceive requirement. But the first element, falsely pretending to be an employee or an officer acting under authority of the United States government, that word falsely, I think, is important. And the defense tried to gloss over it in their reply brief, but I think it's crucial here because it has to be read in conjunction with the words that it modifies. Right? So it modifies pretend. And if falsely meant nothing more than not actually, then falsely pretends would be redundant. That's what falsely usually means. It isn't true. It doesn't have any element of intent. Well, but here it would mean the same thing as pretend. Falsely pretend would mean pretend pretend. Right? And so I think it would be inconsistent with the rule against surplusage to write the word falsely out of it. And if you think of the hypothetical examples. And in that case, is the jury supposed to understand this? I think so. Because if you think of the way that we can speak. Let's just be clear about something. You see, you are now agreeing that there is an intent to deceive requirement here. Well, we agree with what this Court said in Tomshin-McGill, which is that, and this was the government's argument in Tomshin-McGill, is that that intent is incorporated into the two statutory elements that this Court has identified. But doesn't it have to be, but intent to defraud is not, because defraud and deceive are different? Or because what's in the indictment and what has to be proven are different? Or what? In this, in Tomshin-McGill, this Court said that the statute reaches only intentionally deceptive conduct. That's the scope of the statute. And here, our position is that that's clear from the two statutory elements identified in Tomshin-McGill. And I would note that in Tomshin-McGill, right before the Court. That's why I think the case lawyer is so confusing. Because in another part of Tomshin-McGill, it says that 912 requires only that the government show any overt act consistent with the assumed character. Although the defendant must engage in acts that go beyond mere bravado to show it is sufficient that he falsely intended, assumed and protected, and committed an act in keeping with the assumed character. That doesn't say anything about deceiving anybody. Right. I would note also that. Right. Why? So first they say you don't need it, and then they say you do need it. Well, I would agree with the Court that the case law is not a model of clarity, necessarily. But one thing I'd note that's critical here, if you're putting yourself in the shoes of Judge Davila here, presiding over this trial, in the first part of Tomshin-McGill, where this Court talked about what the two elements of the statute are, it cited the model instruction. And if this Court had felt that the model instruction was so fatally flawed, as the defense is arguing here, I don't think the Court would have cited it. Well, this Court has had issues with model instructions before without having caught it. So let's just look at what's going on here. Sure. It seems like, and again, I think Bruce always asks this, you seem to agree with the defendant that the second element of Section 912, the defendant acted as such, requires more than just an innocent act in furtherance of impersonation. Maybe I should unpack that a little bit. It seems like, well, it seems like you're arguing that you agree with that, that it's included in the falsely pretends part of the language. Is that right? I don't think that's exactly the government's position, no. I think the words you used were an innocent over an act in furtherance. I think if it's an act in furtherance of a false impersonation, by definition, it's not an innocent act. Well, if somebody, is it a play? Yes. And they're impersonating an FBI agent, do they really act like an FBI agent? They do things that an FBI agent would do in the play. They act. I mean, wouldn't a jury think that that person was acting as an FBI agent? No. And falsely pretending to be one? No. No, because if you think of how we use these words in everyday speech. Well, I would. And if I were a juror, I'd be totally confused if nobody clarified it. Well, this jury wasn't confused. They deliberated for less than an hour, and they didn't send a single question out about the. . . They weren't, I mean, that's completely circular. If there's something that if they were told would have made a difference, but they weren't told it, that doesn't prove anything. Well, again, I think they were told that it would make a difference because of, among other things, the instruction that they had to find the unreasonable doubt that he falsely pretended to be an officer or employee acting under authority of the United States. Somebody sitting in a theater audience, they might say that person's doing an impression of an FBI agent. They might say. . . Something like one. But I don't think anybody in common speech would say that that person is falsely pretending to be an FBI agent. I don't think that's how we use those terms. And, again, the rule against surplus that you would write the word falsely out of the statute, I think. Is it correct that historically the statute had an intake requirement, and Congress took it out. Yes. And the statute we are looking at does not contain that. Correct. So until 1948, the statute required intensive fraud. In 1948, Congress took that language out of the statute. And part of the reason I think the case law has been all over the place is that the different circuit courts haven't been in agreement about the consequences of Congress's actions. Leptovich. That's the name of the case, Leptovich. Yes. The reason, I gather, Congress took it out was because Leptovich said that it was not necessary to, well, the question of Leptovich was whether the particular, what was particularly alleged in the indictment was sufficient. And what was particularly alleged wouldn't really fit the term defraud in the usual sense. Because, and they said, well, that's sufficient. And so they took it out because Leptovich basically said intent to defraud in the statute doesn't really mean exactly defraud. It means make somebody do something they wouldn't have otherwise done, but not necessarily to their monetary detriment. So that's why it came out, but it didn't come out on the theory that there wasn't any, I mean, it's real requirement, as I understand it. I think that's a fair characterization, right. Now, the D.C. Circuit, for example, has said that by taking out that element in 1948, Congress concluded that everybody who falsely pretends to be a federal officer and then acts as such does intend for the recipient to act in a way they wouldn't have acted otherwise. The Guthrie decision from the Fourth Circuit, likewise, says that we have to give Congress's actions some effect. We can't pretend that words taken out of the statute remained in the statute. And this Court has consistently cited that Guthrie decision from the Fourth Circuit, including in Thomson-McGill. It does say that there has to be an intent to deceive. Right. Well, again, that's in the overbreadth analysis. That's not in the part of the decision that addresses what the elements of the statute are. And here, again, in the section of the decision that articulates the two elements of the statute, it not only cites the model instruction that was used in this case, but it articulates the elements, the same elements that this jury was instructed on. It seems like I'm going to go over this Lebovitch a little bit because you seem to dispute that Section 912 requires a showing that someone was deceived into following a course of action he would not have pursued before the deceitful conduct. But it seems like the Supreme Court, Lebovitch, described this as an element of Section 912, or at least a limitation on the scope of 912. And although the statute, which has been revised, the same limitation was acknowledged just a few years ago in U.S. v. Alvarez, wasn't it? Well, in dicta, yes. In a concurring opinion. Right. In dicta, in a concurring opinion, yes, it was. So, I mean, I guess if you think that this is an element or limitation on the type of conduct prohibited by Section 912, do you think the jury instruction adequately informed the jury in this? I do because, again, Tom Schumigal articulated what the two elements are. And one of those elements is that the person is to act in furtherance of the impersonation. The focus of this statute, and this is clear from 100 years of case law, is not on the reaction or the mental state of the target of this false impersonation. What about the materiality requirement proposed in that context? That is, could one capture the actual limitation really through a materiality, or an objective kind of instruction that would provide a limitation, a First Amendment receiving limitation, but wouldn't be a mens rea requirement as such, and therefore wouldn't deal with the fact, would not reflect the part of the statute that was taken out? I think that is captured in the acts of such element, actually, because, well, if somebody is not acting in a way that at least has the potential of fooling someone, they wouldn't be acting as such, acting in furtherance of the false impersonation. So if we go back to the example of someone on stage, or of Alec Baldwin pretending to be Donald Trump on Saturday Night Live, he's not acting in furtherance of a false impersonation. He's acting in furtherance of a skit. The other hypothetical example given by the defense, the child running around on the playground saying, I'm with the FBI. We know that the FBI does not send children to playgrounds to arrest other children, so that kid is not acting in furtherance of a false impersonation. So I think that would address the concerns that you've raised, Judge Breslin. When putting it off a lot on the jury, if you have a serious First Amendment background problem here, which I think you do, and you're not going to articulate to the jury anything that draws the delineation, you're going to make them read into the question of act as such, when act, after all, an ordinary person would think often that acting is acting, like on a stage. So it's really not at all clear. Well, the defense vigorously made that argument to the jury in closing. Well, so what? They weren't told that it mattered. Well, again, I don't think they expressed confusion about what they were required to find. And, you know, had they sent out a note saying, what if we think this is no different from the kid on the playground, can we still convict? We have a tougher case, but that didn't happen. Okay, thank you very much. I'm sorry, can you just quickly counter the harps? Yes, thank you, Judge Murguia. So we do think that this is absolutely harmless, beyond a reasonable doubt here. No jury looking at these facts could conclude that Mr. York did not intentionally act in an intentionally deceptive way. He wouldn't have gone to all this trouble, as you alluded to. He used his credit card to set up this spoof card account. He elected to use different features of that application, digitally altering his voice, creating an IRS resembling phone number that ended in the last four digits of the actual IRS helpline number, creating this false persona, Judy Smith, referring to a tax audit, referring to three specific years. So, no, no jury confronted with that evidence could have found other ways. Thank you, and we'd ask you to affirm the conviction.  Thank you, Your Honors. I think the Court is spot on in the concern about the sufficiency of the instruction, because it really is where the rubber meets the road. It's where all of the case law, the statute, however it's drafted, is set forth for the jury. And where we're at the point in our briefing where we're arguing over which portions of Black's law definitions apply to different portions of the elements of the offense, I think we're too far afield at that point to say that the jury can possibly be instructed on that. They're not going to be, as the Court noted, no matter how much I hopped up and down during closing argument, complaining of the hypothetical situations that one could be convicted under this statute, the jury had no reason to ask, well, hey, doesn't this include . . . Well, maybe the reason they had no reason to ask was no matter, on any theory, he was guilty, but they thought . . . That's the harmlessness problem. Understood, but I disagree with that. I don't think it's the purview of us at this stage to make that determination. It is . . . It is our purview, I mean, in the sense that, at some point, it's harmless. Understood, but I don't think that burden has been met by the government here. Because, one, it's not simply the transcript of this call. The voice in the call is extraordinarily altered to the extent that it sounds a little bit ridiculous, listening to it from any perspective. And then, when it's sandwiched in between these phone calls, it's apparent, I think, immediately to Mr. Hesinfloh that this is more annoyance from his new girlfriend's . . . I don't know about this whole thing, but if they had done it to me, I wouldn't have known there was such a thing as this whole thing. Understood, and those are all facts for the jury to consider. And that is exactly what we're asking the Court to do, is to remand so that the jury has the opportunity to consider those facts. I don't see why the government should be afraid of having the jury clearly explain the actual elements and the mens rea of the offense. Okay, thank you very much. Thank you. Thank you for your argument. An interesting case, United States v. York.
judges: Hawkins, Berzon, Murguia